**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JACQUELINE D. MARSTELLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:13-cv-00593 (JCC/JFA) |
| | ) | |
| ECS FEDERAL, INC. | ) | |
| f/k/a ELECTRONIC CONSULTING | ) | |
| SERVICES, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER, DEFENSES AND COUNTERCLAIM

COMES NOW THE DEFENDANTS ECS FEDERAL, INC. (formerly, "Electronic Consulting Services, Inc.")(hereinafter "ECS"), S. ROY KAPAN (hereinafter "Mr. Kapani") and GEORGE WILSON (hereinafter "Mr. Wilson"), by counsel, and submit their Answer, Defenses and Counterclaim to the Amended Counterclaim as follows:

## NATURE OF ACTION

1. Denied.

2. Denied.

3. Denied.

## THE PARTIES

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted that Mr. Kapani was employed by ECS in this judicial district.  The remaining allegations are denied.

12.     Admitted.

13.     Admitted.

## JURISDICTION

14.     The Court's jurisdiction is admitted.  The remaining allegations are denied.

15.     This Court's jurisdiction is admitted.  The remaining allegations are denied.

16.     This Court's jurisdiction is admitted.  The remaining allegations are denied.

17.     Admitted.

18.     Admitted that Mr. Kapani was the President and is the CEO of ECS in Fairfax County, in this District.  The remaining allegations in the paragraph are denied.

19.     Admitted.

20.     Admitted.

## VENUE

21.     Admitted.

22.     Admitted that there are allegations of conduct in this judicial district.  The remaining allegations in the paragraph are denied.

23.     Admitted that there are allegations of conduct in this judicial district and employment records are maintained and administered in this judicial district.  The

remaining allegations, including the allegation of unlawful employment practices, in the paragraph are denied.

24.     The Court's venue is admitted.  The remaining allegations are denied.

25.     Admitted Mr. Kapani was President of ECS until 2012, and is the CEO of ECS in Fairfax County, in this judicial district.

26.     Admitted.

27.     Admitted that there are allegations of conduct in this judicial district.   The remaining allegations, including tortuous acts, in the paragraph are denied.

28.     Denied.

29.     The Court's venue is admitted.  The remaining allegations are denied.

## PROCEDURAL STATUS

30.     Admitted.

31.     Admitted.

32.     Defendants lack sufficient information or belief to either admit or deny the allegations in the paragraph, thus strict proof is demanded.

## BACKGROUND

33.     Admitted.

34.     Admitted.

35.     Denied that Ms. Marsteller performed in an exemplary manner.  Admitted she received the standard salary increases and/or bonuses.

36.     Denied that Ms. Marsteller received excellent performance evaluations.  Admitted she received the standard bonuses as provided by ECS.

3

37.     Denied that Ms. Marsteller won $240,000,000 in projected revenue and backlog. Denied that ECS uses the phrase or concept of "Officer in Charge."  Admitted that the ten-year potential value of the USPS contract was $155.8 million assuming that the two-year base contract and the subsequent four two-year option periods are renewed by the USPS.  Denied that the USPS contract was the first Full and Open award for ECS.  The remaining allegations in the paragraph are denied.

38.     Admitted that Ms. Marsteller participated in the standard ECS annual bonus plan. Denied that there were any additional bonuses or commissions to which she is entitled as inferred by the allegations in the paragraph.

39.     Admitted that Ms. Marsteller was the only female executive employee of ECS holding the title of Vice President during her tenure with ECS.  Denied that Ms. Marsteller was the "highest ranking" female at ECS.

40.     Denied.

41.     The characterization that Ms. Marsteller was heavily recruited is denied.

42.     Admitted.

43.     Admit that Ms. Marsteller's business was offered a consulting contract for her services.  The remaining allegations in the paragraph are denied.

44.     Admitted that Ms. Marsteller contributed to the contract win involving the USDA and that she had contact with the USDA at her previous place of employment.  The remaining allegations in the paragraph are denied.

45.     Admitted that ECS offered Ms. Marsteller a full time position.  The remaining allegations in the paragraph are denied.

46.     Denied.

4

47.     Denied.

48.     Admitted that ECS provided Ms. Marsteller with the written Change of Control Agreement, and the terms of the agreement speak for itself.  The remaining allegations in the paragraph are denied.

49.     Admitted that ECS business capture models changed several times during the years 2006 to 2011.  The remaining allegations in the paragraph are denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Admitted.

54.     Denied.

55.     Denied.

56.     Denied.  It is affirmatively averred that under the standard ECS bonus program for which Ms. Marsteller was eligible, bonuses were based upon achieving corporate goals, achieving division goals and the actual revenue/contracts managed by the division. It is denied that the "Officer in Charge" status played a role in bonus calculations.  The remaining allegations in the paragraph are denied.

57.     Admitted that Mr. Kapani agreed to continue to include the USDA FSA contract task orders in Ms. Marsteller's bonus calculation for 2010.  Admitted that ECS believed that Ms. Marsteller did not have any significant contribution to the GNMA contract as it was a non-competitive sole-source follow-on award to a contract that was awarded to ECS before Ms. Marsteller joined ECS.  The remaining allegations in the paragraph are denied.

58.    Denied.

59.    Denied.

60.    Admitted that in June 2011 Mr. Powell informed Ms. Marsteller and Dr. August of a new "capture management" role.  The remaining allegations in the paragraph are denied.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Admit ECS announced the successful capture of the USPS NCSC award on or around April 4, 2011, and that the potential value of the contract assuming all option terms over the ten-year period of the contract were exercised its potential value was approximately $155 million.  The remaining allegations in the paragraph are denied.

66.    Denied.

67.    Admitted that standard ECS bonuses were traditionally paid in late December.  The remaining allegations in the paragraph are denied.

68.    Admitted that a meeting took place between Ms. Marsteller and Mr. Wilson on October 21, 2011.  The remaining allegations in the paragraph are denied.

69.    Denied.

70.    Admitted that on or about October 28, 2011, Ms. Marsteller submitted documentation on opportunities as required by the duties of her position.  The remaining allegations in the paragraph are denied.

71.    Denied.

72.     Admitted.

73.     Admitted that Mr. Wilson told Ms. Marsteller words to the effect that "We don't see this working out with you."  The remaining allegations in the paragraph are denied.

74.     Admitted that during the November 3, 2011 meeting, Mr. Wilson told Ms. Marsteller that ECS was moving into Defense areas and focusing on SETA work.  The remaining allegations in the paragraph are denied.

75.     Denied that Mr. Wilson told Ms. Marsteller that she would be "out" by the end of the year.  Admitted that Mr. Wilson and Ms. Marsteller discussed that the end of the year would be a reasonable timeline for her departure.  Admitted that Mr. Wilson agreed to Ms. Marsteller's request that she be permitted to announce her departure as having been her decision.

76.     Denied that Mr. Wilson made the "wanted this to be seen as a win/win" statement. Admitted that Mr. Wilson and Ms. Marsteller discussed the possibility of her providing services to ECS as a consultant.

77.     Admitted that during the November 3, 2011 meeting, Ms. Marsteller asked about her standard ECS bonus, not the alleged 1% bonus related to the USPS contract. Admitted that Mr. Wilson stated that ECS was not making its targeted revenue numbers. The remaining allegations in the paragraph are denied.

78.     Denied that Ms. Marsteller had any ownership interest in ECS.  Admitted that Ms. Marsteller was the only female Account Executive.  Denied that Ms. Marsteller was the only female member of the Leadership Team.

79.     Denied.

80.     Denied.

81.     Denied that Ms. Marsteller brought in $240 million in contract revenue and back log.  Admitted that less than 10% of the awards for which Ms. Marsteller was involved represented 8(a) business.  Admitted that as an Account Executive Ms. Marsteller was directed to focus on winning new business for ECS.

82.     Denied.  It is affirmatively averred that Ms. Marsteller's male counterpart Account Executive, Dr. Rich August, was pursuing new business opportunities across all of his accounts.  Denied that the EPA win was an 8(a) contract.  Further, it is affirmatively averred that Scott Weaver's role as Corporate Development Lead was not the same as an Account Executive.  Admitted that Dr. August and Mr. Weaver remained employed at ECS at the time of Ms. Marsteller's termination.  It is affirmatively averred that soon after Ms. Marsteller's termination, ECS terminated a male Account Executive and another male employee responsible for business development for performance related issues.

83.     Denied that Ms. Marsteller's male colleagues (Dr. August and Mr. Weaver) brought in less revenue and had a less robust and qualified pipeline.  Admitted that Dr. August and Mr. Weaver were not terminated.  It is affirmatively averred that soon after Ms. Marsteller's termination, ECS terminated a male Account Executive and another male employee responsible for business development for performance related issues

84.     Denied that ECS provided false reasons for Ms. Marsteller's termination.  Denied that ECS continued to pursue new business opportunities in Mr. Marsteller's pipeline.  Admitted that ECS Division Managers continued to work existing contracts and follow-on contracts in business area including solutions, IT Infrastructure Support and Federal

8

Civilian customers.  Denied the characterization or inference that these areas of ECS practice somehow belonged to Ms. Marsteller.

85.     Denied.

86.     Denied.

87.     All allegations concerning Ms. Marsteller's claim concerning an entitlement to a bonus of 1% of the value of the USPS NCSC contract are denied.  Admitted that ECS paid to Ms. Marsteller a bonus in the amount of $94,986 for which she was eligible under the only bonus plan in effect at ECS.

**COUNT ONE –**
**GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**
**(against ECS Federal, Inc.)**

88.     Defendants' responses to the foregoing allegations are incorporated as if realleged herein.

89.     Denied.

90.     Admitted.

91.     Denied.

92.     Denied.

93.     Denied.

94.      Denied that Ms. Marsteller brought in $240 million in contract revenue and back log.  Admitted that less than 10% of the awards for which Ms. Marsteller was involved represented 8(a) business.  Admitted that as an Account Executive Ms. Marsteller was directed to focus on winning new business for ECS.

95.     Denied.

96.     Denied.

97.     Denied that ECS provided false reasons for Ms. Marsteller's termination.  Denied that ECS continued to pursue new business opportunities in Mr. Marsteller's pipeline. Admitted that ECS Division Managers continued to work existing contracts and follow-on contracts in business area including solutions, IT Infrastructure Support and Federal Civilian customers.  Denied the characterization or inference that these areas of ECS practice somehow belonged to Ms. Marsteller.

98.     Denied that ECS engaged in any discriminatory treatment of Ms. Marsteller, thus all of the allegations in the paragraph are denied.

99.     Denied.

100.    Denied.

101.    Denied.

### COUNT TWO – BREACH OF CONTRACT
**(against ECS Federal, Inc.)**

102.    Denied.

103.    Admit the USPS NCSC contract win was announced on or around April 3, 2011. The remaining allegations in the paragraph are denied.

104.    Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

105.    Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

106.    Assuming "earned bonus" refers to the standard ECS bonus, the allegations are denied.  It is further denied that ECS ever offered or represented to Ms. Marsteller a bonus based on 1% of the USPS NCSC contract value.

107.    Assuming "earned bonus" refers to the standard ECS bonus, the allegations are denied.  It is further denied that ECS ever offered or represented to Ms. Marsteller a bonus based on 1% of the USPS NCSC contract value.

108.    Denied that any such offer or representation was ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

109.    Assuming "bonus" refers to the standard ECS bonus, the allegations are denied. It is further denied that ECS ever offered or represented to Ms. Marsteller a bonus based on 1% of the USPS NCSC contract value.

110.    Assuming "bonus" refers to the standard ECS bonus, the allegations are denied. It is further denied that ECS ever offered or represented to Ms. Marsteller a bonus based on 1% of the USPS NCSC contract value.

111.    Denied.

### COUNT THREE – UNJUST ENRICHMENT
### (ALTERNATIVE PLEADING TO BREACH OF CONTRACT)
### (against ECS Federal)

112.    Defendants' responses to the foregoing allegations are incorporated as if realleged herein.

113.    Denied.

114.    Admitted.

115.     It is affirmatively averred that ECS paid Ms. Marsteller her bonus in the amount of $94,986.  It is denied that ECS ever offered or represented to Ms. Marsteller a bonus based on 1% of the USPS NCSC contract value.

116.    Denied that ECS ever offered or represented to Ms. Marsteller a bonus based on 1% of the USPS NCSC contract value, thus all of the allegations in the paragraph are

denied.  It is further specifically denied that the 1% of the "value" of the USPS NCSC contract is $1.55 million.

117.    Denied.

118.    Denied that ECS ever offered or represented to Ms. Marsteller a bonus based on 1% of the USPS NCSC contract value, thus all of the allegations in the paragraph are denied.

119.    Denied that ECS ever offered or represented to Ms. Marsteller a bonus based on 1% of the USPS NCSC contract value, thus all of the allegations in the paragraph are denied.

**COUNT FOUR –**
**WRONGFUL TERMINATION IN VIOLATION OF VA. CODE § 40.1-29**
**(against ECS Federal, Inc., S. Roy Kapani and George Wilson)**

120.    Denied.

121.    Admitted the USPS NCSC contract win was announced on or around April 3, 2011.  The remaining allegations in the paragraph are denied.

122.    Denied.

123.    Admitted that Mr. Wilson told Ms. Marsteller words to the effect that "We don't see this working out with you."  Admitted that during the November 3, 2011 meeting, Mr. Wilson told Ms. Marsteller that ECS was moving into Defense areas and focusing on SETA work.  The remaining allegations in the paragraph are denied.

124.    Denied that Ms. Marsteller was terminated for the reasons alleged and denied that Ms. Marsteller was terminated for demonstrably false and unjustified reasons.  The remaining allegations in the paragraph are also denied.

125.    Denied.

12

126.    Denied.

127.    Assuming "bonus" refers to the standard ECS bonus, the allegations are denied. It is further denied that ECS ever offered or represented to Ms. Marsteller a bonus based on 1% of the USPS NCSC contract value.

128.    Denied.

129.    Denied.

130.    Denied.

**COUNT FIVE – ACTUAL FRAUD**
**(against ECS and S. Roy Kapani)**

131.    Defendants' responses to the foregoing allegations are incorporated as if realleged herein.

132.    Denied.

133.    Denied that any such offer or representation was ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.  It is further specifically denied that 1% of the "value" of the USPS NCSC contract is $1.55 million.

134.    Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

135.    Denied that Mr. Kapani made the alleged "positive statement of fact," thus all of the allegations in the paragraph are denied.

136.    Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

137.    Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.  It is further denied that Ms. Marsteller

forewent other commissions as she accepted a bonus in the amount of $94,986 for which she was eligible under the only bonus/commission plan in effect at ECS.

138.    Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

139.    Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

140.    Denied.

141.    Denied.

142.    Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

143.    Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

144.    Denied.

145.    Denied.

146.    Denied.

## COUNT SIX – CONSTRUCTIVE FRAUD
### (ALTERNATIVE PLEADING TO ACTUAL FRAUD)
### (against ECS and S. Roy Kapani)

147.    Defendants' responses to the foregoing allegations are incorporated as if realleged herein.

148.    Denied.

149.    Denied that any promise of 1% of the USPS NCSC contract value was made.  The remaining allegations in the paragraph are denied.

150.   Denied that any promise of 1% of the USPS NCSC contract value was made. The remaining allegations in the paragraph are denied.

151.   Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

152.   Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

153.   Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

154.   Denied that any such representations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

155.   Denied that any such representations or promises were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

156.   Denied that Defendants including Mr. Kapani engaged in fraud, thus all of the allegations in the paragraph are denied.

### COUNT SEVEN -
### <u>TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY</u>
### (against S. Roy Kapani and George Wilson)

157.   Defendants' responses to the foregoing allegations are incorporated as if realleged herein.

158.   Denied.

159.   Denied that Ms. Marsteller had any ownership interest in ECS.  Admitted that Ms. Marsteller was the only female Account Executive.  Denied that Ms. Marsteller was the only female member of the Leadership Team.

160.    Denied that any such representations, confirmations, assurances or promises were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

161.    Denied.

162.    Denied that any such representations, confirmations assurances or promises were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

163.    Denied.

164.    Denied.

165.    Denied.

166.    Denied that Ms. Marsteller brought in $240 million in contract revenue and back log.  Admit that less than 10% of the awards for which Ms. Marsteller was involved represented 8(a) business.  Denied that the EPA win was an 8(a) contract.  Admitted that as an Account Executive Ms. Marsteller was directed to focus on winning new business for ECS.  The remaining allegations in the paragraph are denied.

167.    Denied.

168.    Denied.

169.    Denied.

170.    Denied.

171.    Denied.

**COUNT EIGHT - CIVIL CONSPIRACY**
**(against all Defendants)**

172.    Defendants' responses to the foregoing allegations are incorporated as if realleged herein.

173.    Denied.

174.   Denied that any such representations or promises were ever made to Ms. Marsteller and that the Defendants engaged in a conspirace, thus all of the allegations in the paragraph are denied.

175.   Denied.

176.   Denied that Defendants conspired and that Ms. Marsteller was ever entitled to compensation of 1% of the value of the USPS NCSC contract, thus all of the allegations in the paragraph are denied.

177.   Denied that Defendants had motives for conspiring and that any such promises or misrepresentations were ever made to Ms. Marsteller, thus all of the allegations in the paragraph are denied.

178.   Denied.

179.   Denied that ECS, Mr. Kapani or Mr. Wilson engaged in any of the alleged conduct, thus all of the allegations in the paragraph are denied.

180.   Denied that ECS, Mr. Kapani or Mr. Wilson engaged in any of the alleged concerted actions, thus all of the allegations in the paragraph are denied.

181.   Denied.

182.   Denied.

## AFFIRMATIVE DEFENSES

1.   The Complaint fails to state claims upon which relief may be granted.

2.   To the extent Plaintiff's claims in Count One are based on acts that occurred prior to any applicable statute of limitations, including the claim that ECS engaged in disparate treatment in that Mr. Kapani allegedly visited Ms. Marsteller's male counterparts but not her, the claims are time-barred and barred because Plaintiff failed to

exhaust her administrative remedies and failed to comply with the procedural prerequisites prior to bringing her claims before this Court.

3. Plaintiff's claims in Count One against Defendant ECS are barred because all job actions taken with respect to Plaintiff were for legitimate, non-discriminatory reasons that were unrelated to Plaintiff's gender or any protected activity in which Plaintiff engaged.

4. With respect to Count One, Defendant ECS avers that even if some impermissible motive were a factor in any employment decision concerning Plaintiff, a claim that Defendants expressly deny, the same decision(s) would have been reached for legitimate business reasons.

5. With respect to Count One, Plaintiff's claim for back pay is limited, and her claim for front pay and benefits is eliminated pursuant to the after-acquired evidence doctrine based upon Plaintiff's breaches of the ECS, Inc. Employment Proprietary Information, Inventions and Non-Competition Agreement including paragraphs 1.1, 1.4 and 7, breach of fiduciary duty, conversion and other wrongful acts involving her misappropriation of confidential, proprietary and trade secret information of Defendant ECS.

6. With respect to Count Two, the alleged oral contract is barred by the statute of frauds, because the alleged contract cannot be performed within a year, as determination of the total "value" of the USPS NCSC contract requires performance by ECS under the contract which has a two-year base period, with four two-year option periods.

7.      With respect to Count Two, Defendants expressly deny that any contract or promise of payment of 1% of the value of the USPS NCSC contract was ever made with or to Ms. Marsteller, however, in the alternative, any such contract or promise term is too vague and ambiguous to be enforced.

8.      With respect to Count Two, Defendants expressly deny that any contract or promise of payment of 1% of the value of the USPS NCSC contract was ever made with or to Ms. Marsteller, however, in the alternative, any such contract or promise fails for lack of consideration based upon Ms. Marsteller's acceptance of the $94,986 bonus payment in December of 2011.

9.      With respect to Count Two, Defendants expressly deny that any contract or promise of payment of 1% of the value of the USPS NCSC contract was ever made with or to Ms. Marsteller, however, in the alternative, any such contract or promise was waived based upon Ms. Marsteller's acceptance of the $94,986 bonus payment in December of 2011.

10.     With respect to Count Two, Defendants expressly deny that any contract or promise of payment of 1% of the value of the USPS NCSC contract was ever made with or to Ms. Marsteller, however, in the alternative, to the extent any such contract is proved, any provable damages are subject to a setoff in the amount of $94,986.

11.     With respect to Count Three, Defendants expressly deny that any contract or promise of payment of 1% of the value of the USPS NCSC contract was ever made with or to Ms. Marsteller, however, in the alternative, to the extent any such contract is proved, Plaintiff's claim for unjust enrichment is barred as a matter of law.

19

12.     With respect to Count Three, Plaintiff's claim for unjust enrichment is barred by Plaintiff's unclean hands based upon her breaches of the ECS, Inc. Employment Proprietary Information, Inventions and Non-Competition Agreement, breach of fiduciary duty, conversion and other wrongful acts involving her misappropriation of confidential, proprietary and trade secret information of Defendant ECS.

13.     With respect to Count Three, Defendants expressly deny that ECS was unjustly enriched, however, in the alternative, any such claim for payment was waived based upon Ms. Marsteller's acceptance of the $94,986 bonus payment in December of 2011.

14.     With respect to Count Three, Defendants expressly deny that ECS was unjustly enriched, however, in the alternative, damages related to any such claim for payment should be setoff based upon Ms. Marsteller's acceptance of the $94,986 bonus payment in December of 2011.

15.     With respect to Count Four, Virginia Code § 40.1-29 does not create a private right of action for the recovery of unpaid compensation.

16.     With respect to Count Four, Virginia Code § 40.1-29 does not provide for the recovery of attorney's fees.

17.     With respect to Count Four, to the extent Plaintiff asserts a claim for wrongful termination, the claim for back pay is limited, and her claim for front pay and benefits is eliminated pursuant to the after-acquired evidence doctrine based upon Plaintiff's breaches of the ECS, Inc. Employment Proprietary Information, Inventions and Non-Competition Agreement including paragraphs 1.1, 1.4 and 7, breach of fiduciary

20

duty, conversion and other wrongful acts involving her misappropriation of confidential, proprietary and trade secret information of Defendant ECS.

18.     With respect to Count Four, Defendants expressly deny that Defendants violated § 40.1-29, however, in the alternative, any such claim for payment was waived based upon Ms. Marsteller's acceptance of the $94,986 bonus payment in December of 2011.

19.     With respect to Count Four, Defendants expressly deny that Defendants violated § 40.1-29, however, in the alternative, damages related to any such claim for payment should be setoff based upon Ms. Marsteller's acceptance of the $94,986 bonus payment in December of 2011.

20.     With respect to Count Five, Defendants expressly deny that any representation or promise of payment of 1% of the value of the USPS NCSC contract was ever made to Ms. Marsteller; however, in the alternative, to the extent it is asserted Jeff Powell made any such representation or promise, he acted without actual or apparent authority.

21.     With respect to Count Five, Defendants expressly deny that Defendants engaged in fraud; however, in the alternative, any such claim for payment was waived based upon Ms. Marsteller's acceptance of the $94,986 bonus payment in December of 2011.

22.     With respect to Count Five, Defendants expressly deny that Defendants engaged in fraud; however, in the alternative, damages related to any such claim for payment should be setoff based upon Ms. Marsteller's acceptance of the $94,986 bonus payment in December of 2011.

23. With respect to Count Six, Defendants expressly deny that any representation or promise of payment of 1% of the value of the USPS NCSC contract was ever made to Ms. Marsteller; however, in the alternative, to the extent it is asserted Jeff Powell made any such representation or promise, he acted without actual or apparent authority.

24. With respect to Count Six, Defendants expressly deny that Defendants engaged in constructive fraud; however, in the alternative, any such claim for payment was waived based upon Ms. Marsteller's acceptance of the $94,986 bonus payment in December of 2011.

25. With respect to Count Four, Defendants expressly deny that Defendants engaged in constructive fraud, however, in the alternative, damages related to any such claim for payment should be setoff based upon Ms. Marsteller's acceptance of the $94,986 bonus payment in December of 2011.

26. With respect to Counts Seven and Eight, Defendants' actions were privileged and justified.

27. With respect to Counts Seven and Eight, the claims are barred by the intra-corporate immunity doctrine.

WHEREFORE, it is denied that Mr. Marsteller is entitled to the entry of judgment in her favor on the claims asserted and denied that she is entitled to any relief whatsoever. The Defendants respectfully request that judgment be entered in their favor, that this matter be dismissed with prejudice, and that they be awarded their costs in defending this action.

## COUNTERCLAIM

The Defendant, ECS Federal, Inc., by counsel, respectfully submits its Counterclaim against Ms. Marsteller, pursuant to Rule 13, Fed.R.Civ.P., as follows:

1.     In the Fall of 2011, ECS employed Ms. Marsteller as a Senior Vice President and Account Executive.

2.     On November 3, 2011, ECS advised Ms. Marsteller that her employment with ECS was to be terminated by the end of the year.  The termination was not effective immediately because ECS wanted to provide Ms. Marsteller with advance notice and to permit her the opportunity to announce her departure as having been her decision.

3.     Ms. Marsteller used her remaining time with ECS and her continued access to ECS facilities and resources to misappropriate confidential, proprietary and trade secret information of ECS.

4.     On November 16, 2011, Ms. Marsteller attached an external electronic storage device to her ECS desktop computer located within her office of ECS and accessed the F: drive of the ECS computer server to transfer highly sensitive and confidential information to the external storage device.

5.     Again on November 30, 2011, Ms. Marsteller attached another external electronic storage device to her ECS desktop computer located within her office of ECS and accessed the F: drive of the ECS computer server to transfer highly sensitive and confidential information to the external storage device.

6.     At the time Ms. Marsteller transferred the highly sensitive and confidential information of ECS to the external storage devices, she was not engaged in any work related activities on behalf of ECS which would have required her to access the

23

information or transfer it to any storage device outside of the control of ECS. Ms. Marsteller was not authorized to transfer the highly sensitive and confidential information of ECS to any external storage devices.

7. The highly sensitive and confidential information accessed by Ms. Marsteller and transferred to the external devices includes the following documents which were protected by maintaining them on an internal ECS computer server which requires and ECS issued account and password to access the server, and which are not shared with or known by the public:

a. The list of the wages ECS pays each of the hundreds of staff on its contract with the USPS NCSC along with the corresponding hourly billing rates. This information is highly confidential and would allow a competitor to understand actual cost data that only an incumbent would have and give the competitor an unfair pricing advantage to bid against ECS in a re-competition for any subsequent or future contract since the USPS is a very price sensitive customer. This information would also assist a competitor to compete with ECS for other similar contracts..

b. An invoice showing the actual hours worked by the staff and the associated billing rates per labor category on the USPS NCSC contract. This confidential information can be used by a competitor to bid against ECS in a re-competition by knowing the exact mix of staff and the amount paid by the USPS, that only the incumbent contractor would know.

c. The USPS NCSC Quality Control Plan developed by ECS. Information contained in this plan is confidential and would aid a competitor in writing a technical proposal to bid against ECS in a re-competition.

d. USPS NCSC Metrics. The Metrics for the USPS NCSC contact, which would also aid a competitor in writing a technical proposal in competition with ECS.

f. Pipeline Review documents. A business development pipeline showing all of the new business opportunities ECS was tracking and intend to bid upon. The document contains details about dates, prices, and insight ECS learned about the identified opportunities. This information is highly confidential and if it were to be made available to a competitor, that competitor would know ECS's business development and bidding plans. The Pipeline report included ECS's estimate of the total price of the opportunity, which would allow a competitor to bid below the ECS price.

g.  A Waterfall Report which contains a full list of all of ECS's active contracts including the values, end dates, contract numbers, etc., which would allow a competitor to target ECS's contracts upon re-competition.  This information is not known to the public and would provide an unfair competitive advantage to competitors and cause irreparable harm to ECS.

e.  Confidential accounting system reports known as "Job Summary Reports" (in the form of an income statement) showing monthly and year-to-date revenue amounts along with all of the various contract costs (both direct and indirect) and profit for every contract with which Ms. Marsteller was involved while working for ECS.

f.  A Capture Plan and Capture Templates for a FCC Infrastructure contract opportunity.   In her role as Account Executive, Ms. Marsteller was often the Capture Manager for numerous new contract opportunities and assigned to the capture role of this contract.  "Capture" is a term used by business development and proposal professionals to describe the act of pursuing and winning (i.e., "capturing") new contracts.  All Capture Plans residing on ECS's computer system are confidential and proprietary as they contain ECS's unique format for summarizing a new contact opportunity and ECS's unique plan to approach the capture project.

8.      In addition to the documents described above, Ms. Marsteller also misappropriated the highly confidential, proprietary and trade secret management system documents ECS developed to become ISO certified.  The International Organization for Standardization ("ISO") established quality management system standards designed to improve the efficiency and productivity of organizations.

9.      To become ISO certified, an organization must demonstrate through an initial audit and subsequent annual audits conducted by an independent certification agency that it has developed and implemented the business processes established and required by the ISO standards.  ISO certification increases the value of an organization by opening contracting opportunities that require ISO certification, and by elevating its perception in the contracting community, thus increasing its good will and increasing its

scores on Technical Proposals.  ECS obtained its ISO certification on July 15, 2005, and passed all subsequent annual audits.

10.     ECS spent significant time, effort and expense in developing its ISO management system documentation and implementing the system.  It continues to spend significant expense to maintain the system and to perform internal and external audits to prevent the registration from expiring.  ECS employs a full-time ISO Quality manager to run its system and prepare for audits..  The ISO management system documents which were misappropriated by Ms. Marsteller derive independent economic value, from not being generally known, and not being readily ascertainable by proper means by third parties.

11.     ECS protects the security of the ISO management system documents by maintaining them on an internal ECS computer server which requires an ECS issued account and password to access the server.

12.     ECS further requires its employees, including Ms. Marsteller, to sign an Employment Proprietary Information, Inventions and Non-Competition Agreement ("Proprietary Information Agreement"), which in pertinent part, requires employees to maintain the confidentiality of proprietary and confidential information of ECS and to return to ECS all confidential and proprietary documents upon the employee's termination of employment.  Ms. Marsteller signed the agreement on November 30, 2006.

13.     Additionally, the ECS Code of Conduct, contained in the ECS Employee Handbook advises employees that "ECS proprietary information may not be disclosed to

anyone without the proper authorization," and that "[e]mployees should also take care to secure proprietary information that is in the offices or on their computers."

14.     From December 2, 2011 through December 18, 2011, using her ECS assigned email account, Ms. Marsteller emailed confidential and proprietary information of ECS to her private email account jackie_marsteller@cox.net.

15.     The confidential information misappropriated by Ms. Marsteller through email included a December 2, 2011 PowerPoint presentation for the ECS Strategic Operations Meeting showing the complete ECS business development pipeline at the time, an ECS Organizational Chart Template to be used for a response to a solicitation, and multiple internal emails from April of 2011 detailing ECS's strategy and efforts to respond to the GSA GITGO Request for Information ("RFI").

16.     Ms. Marsteller's last day of employment with ECS was scheduled to be December 31, 2011.  It was scheduled by ECS in this manner so that Ms. Marsteller would be eligible to receive the 2011 award incentive bonus payment.  In order to receive the payment, an employee must be employed on the last day of the calendar year. Although Ms. Marsteller stopped reporting to work at the ECS offices by December 9, 2011, ECS considered her to remain employed.

17.     On December 20, 2011, Ms. Marsteller contacted ECS and requested that her effective termination date be December 15, 2011.  Presumably she asked for this change so that she could accept employment with her current employer, Ausley Associates, Inc. ("Ausley"), located in Lexington Park, Maryland.  Ms. Marsteller lists on an internet professional networking website that she began working for Ausley in December 2011.

27

18.     ECS agreed to the request, and advised Ms. Marsteller in writing that notwithstanding the effective termination date of December 15, 2011, she would remain eligible to receive 2011 award incentive bonus payment in the total amount of $94,986.00.

19.     ECS also advised Ms. Marsteller in writing that it had discovered three binders of proposals belonging to her prior employer, The Orkand Corporation (acquired by Harris Corporation).  By bringing these documents belonging to her prior employer to ECS's offices, Ms. Marsteller breached the provision of the Information Agreement which prohibited her from bringing onto the ECS premises any unpublished documents or property belonging to any former employer.  ECS returned the binders to Ms. Marsteller and requested that she verify in writing that she did not utilize the proposals in any way during the course of her employment with ECS.

20.     Concerned over the discovery of the binders, ECS further reminded Ms. Marsteller in writing of her obligations under the Information Agreement and advised her that, "[i]f you have any ECS Proprietary Information you must return it immediately and you are prohibited from disclosing it to anyone."

21.     On December 30, 2011, ECS paid Ms. Marsteller the 2011 award incentive bonus payment in the total amount of $94,986.00.  At the time of the payment ECS was not aware that Ms. Marsteller had misappropriated its confidential and proprietary information and had breached her contractual and fiduciary obligations.  Had ECS known that Ms. Marsteller misappropriated such information, it would not have considered Ms. Marsteller's employment to have continued until December 31, 2011, it would have terminated her immediately and not paid the 2011 award incentive bonus.

22.     Like ECS, Ms. Marsteller's new employer, Ausley, is in the business of government contracting.   According to information on the website for Ausley, it was established in 1997.   At the time Ms. Marsteller began employment with Ausley in December 2011, Ausley had not obtained an ISO certification.

23.     On July 31, 2012, Ausley received its ISO 9001:2008 certification.   This is the same certification held by ECS.   In a press release dated October 4, 2012, Ausley stated:

> "Ausley was determined to become certified using ISO standards because we understand how important quality is in regard to our products and services and, most importantly, in our relationships with our government customer," said Vice President of Business Process Engineering Jackie Marsteller.   "Under our newly structured framework, we are better able to monitor, measure and control the results of our business practices, thus allowing us to prevent failures and continuously improve."

24.     In her role as Vice President of Business Process Engineering for Ausley, it is reasonably believed that Ms. Marsteller was responsible for implementing the business processes and procedures required to obtain ISO certification.

25.     Based upon Ms. Marsteller's misappropriation of ECS's confidential, proprietary and trade secret ISO management system documents, Ms. Marsteller's role as Vice President of Business Process Engineering for Ausley, and the timing of Ausley's obtaining ISO certification, it is reasonably believed that Ms. Marsteller used or disclosed ECS's confidential, proprietary and trade secret information for her own benefit and the benefit of Ausley.

### COUNT I: Violation of the Uniform Virginia Trade Secrets Act

26.     Paragraphs 1 through 25 are adopted and incorporated herein by reference.

27.     Ms. Marsteller willfully, maliciously and intentionally misappropriated ECS's trade secrets by improper means, in violation of Va. Code Ann. § 59.1-336 *et seq.*

28.     The management system documents developed by ECS to obtain ISO certification, the ECS Capture Plan and Capture Plan Templates, Pipeline review documents, and other confidential information derive independent economic value from not being generally known outside of ECS and are not readily accessible by proper means.  This information constitutes trade secrets of ECS.

29.     ECS used reasonable efforts under the circumstances to maintain the secrecy of its trade secrets by employing a number of safeguards including restricting access to its computer systems through the use of passwords, requiring employees including Ms. Marsteller to sign the Proprietary Information Agreement, and notification of confidentiality obligations in the ECS Code of Conduct.

30.     Ms. Marsteller acted willfully and maliciously when she acquired ECS trade secrets by improper means in exceeding her authority in copying the trade secrets to external storage devices before her employer with ECS ended, and in retaining and not returning such information despite ECS's specific request to do so, and in violation of her contractual and fiduciary obligations.

31.     Ms. Marsteller used and disclosed ECS's trade secrets for the benefit of herself and the benefit of her current employer.

32.     As a direct and proximate result of the wrongful actions of Ms. Marsteller, ECS has been caused to suffer damages including the actual loss of the information caused by the misappropriation and the unjust enrichment caused by the

misappropriation. ECS is entitled to damages measured by its actual loss and royalty payments for the use of the information.

33. Given Ms. Marsteller's willful and malicious misappropriation, ECS seeks an award of punitive damages in an amount not exceeding twice any award or $350,000, which ever is less. ECS further seeks an award of its reasonable attorneys' fees pursuant to Va. Code Ann. § 59.1-338.1.

34. ESC requests an injunction requiring Ms. Marsteller to return all trade secret information, and prohibiting her from using and/or disclosing any such information.

### COUNT II: Violation of the Virginia Computer Crimes Act

35. Paragraphs 1 through 25 are adopted and incorporated herein by reference.

36. Ms. Marsteller's use of the ECS computer system to make unauthorized copies of ECS's confidential, proprietary and trade secret documents constitutes a violation of Va. Code Ann. § 18.2-152.4, as authorized by § 18.2-152.12.

37. As a direct and proximate result of the wrongful actions of Ms. Marsteller, ECS has been caused to suffer damages, including the expense of hiring a computer forensics firm to determine the extent of the misappropriation, and has incurred costs of this suit including attorneys' fees.

### COUNT III: Breach of Contract

38. Paragraphs 1 through 25 are adopted and incorporated herein by reference.

39. Under the terms of paragraph 1.1 of the Proprietary Information Agreement Ms. Marsteller agreed in pertinent part as follows:

31

At all times during my employment and thereafter, I will hold in the strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information (defined below) . . .

40.     Under the terms of paragraph 7 of the Proprietary Information Agreement Ms. Marsteller agreed in pertinent part as follows:

When I leave the employ of the Company, I will deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together will all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company.

41.     In breach of the Proprietary Information Agreement, Ms. Marsteller failed to return and maintained ECS's materials and Proprietary Information.

42.     In breach of the Proprietary Information Agreement, Ms. Marsteller used and disclosed ECS's Proprietary Information.

43.     Based upon Ms. Marsteller's breaches and pursuant to the specific relief provided by paragraph 8 of the Proprietary Information Agreement, ECS seeks an injunction requiring Ms. Marsteller to return all ECS materials and Proprietary Information, and prohibiting her from using and/or disclosing any such information.

44.     As a direct and proximate result of the breaches by Ms. Marsteller, ECS was caused to suffer damages including the actual loss of the ECS materials and Proprietary Information and is entitled to royalty payments for the use and disclosure of ECS's Proprietary Information.

**COUNT IV: Conversion**

45.     Paragraphs 1 through 25 are adopted and incorporated herein by reference.

46.     In copying ECS's confidential and proprietary information without authority and maintaining such information after the termination of her employment with

ECS, Ms. Marsteller wrongfully exercised dominion and control over such property inconsistent with the rights of ECS.

47.     As a direct and proximate result of the wrongful actions of Ms. Marsteller, ECS was caused to suffer damages including the actual loss of the property and is entitled to royalty payments for the wrongful use and disclosure of such property.

48.     Ms. Marsteller's conduct described herein, was willful and malicious, and exhibits such disregard for the rights of ECS that an award of punitive damages is justified.

## COUNT V: Breach of Fiduciary Duty

49.     Paragraphs 1 through 25 are adopted and incorporated herein by reference.

50.     As an employee and executive of ECS, Ms. Marsteller owed a duty of loyalty to ECS, which included the duty not to misappropriate or disclose ECS's confidential and proprietary information while employed by ECS and after the termination of her employment.

51.     Ms. Marsteller breached this fiduciary duty of loyalty by copying ECS's confidential and proprietary information, and by retaining and using such information after the termination of her employment with ECS.

52.     As a direct and proximate result of the wrongful actions of Ms. Marsteller, ECS was caused to suffer damages including the actual loss of the confidential and proprietary information and is entitled to royalty payments for the wrongful use and disclosure of such information.

53.    Ms. Marsteller's conduct described herein, was willful and malicious, and exhibits such disregard for the rights of ECS that an award of punitive damages is justified.

**COUNT VI: Unjust Enrichment**
**In the alternative to Affirmative Defenses**
**Nos. 8, 9, 10, 13, 14, 18, 19, 21, 22, 24 and 25**

54.    Paragraphs 1 through 25 are adopted and incorporated herein by reference.

55.    Ms. Marsteller was employed at-will by ECS.

56.    On November 3, 2011, ECS advised Ms. Marsteller that her employment would be terminated.   ECS was within its rights to terminate Ms. Marsteller's employment immediately.   However, ECS conferred a benefit upon Ms. Marsteller by extending her employment to the end of December 2011, to permit her to received continued salary and benefits, and to be eligible to receive the end of year bonus payment.   To be eligible to receive the bonus payment, Ms. Marsteller was required to be employed through December 31, 2011.

57.    ECS paid the bonus to Ms. Marsteller in the amount of $94,986, and she subsequently cashed the bonus check on January 5, 2012.

58.    Had ECS known that Ms. Marsteller made unauthorized copies of its confidential, proprietary and trade secret information after it notified her of the termination of her employment, ECS would have terminated Ms. Marsteller's employment immediately and she would not have been eligible to receive the bonus payment.

59.     Ms. Marsteller accepted and retained the benefit of continued employment and the $94,986 bonus payment knowing that she would not be entitled to such benefits had ECS learned of her wrongdoing.

60.     As a result of her inequitable conduct and unjust enrichment, ECS seeks repayment of all salary and benefits from November 3, 2011 through the end of December 2011, and repayment of the $94,986 bonus payment.

## **PRAYER FOR RELIEF**

WHEREFORE, ECS Federal, Inc. requests that the Court enter judgment on all counts against Ms. Marsteller, and further:

1.     Award ECS compensatory damages, including its actual loss, expenses and a reasonable royalty on Counts I through V;

2.     Award ECS damages in the amount of salary and benefits paid to Ms. Marsteller from November 3, 2011 through December 2011, and $94,986 on Count VI;

3.     Award ECS punitive and exemplary damages on Counts I, IV and V;

4.     Award ECS its reasonable attorneys' fees on Counts I and II;

5.     Award ECS injunctive relief requiring Ms. Marsteller to return all ECS confidential, proprietary and trade secret information, and prohibiting her from using and/or disclosing any such information;

6.     Award ECS pre- and post-judgment interest on all damage awards;

7.     Award ECS its costs of the litigation; and,

8.     Award ECS such other and further relief as may be appropriate under the circumstances.

## JURY REQUEST

Defendants request a trial by jury.

June 26, 2013

Respectfully submitted,

**ECS Federal, Inc., S. Roy Kapani and George Wilson**

**By Counsel**

_____/s/_____
Michael E. Barnsback, Esquire
Virginia State Bar No. 33113
*Counsel for ECS Federal, Inc., S. Roy Kapani and George Wilson*
LeClairRyan
2318 Mill Road, Suite 1100
Alexandria, VA  22314
Phone: 703-647-5931
Fax: 703-647-5993
Email: michael.barnsback@leclairryan.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of June, 2013, a true and correct copy of the foregoing was electronically filed with the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

Carla D. Brown, Esq. (VSB 44803)
*Counsel for Plaintiff Jacqueline D. Marsteller*
Charlson Bredehoft Cohen Brown & Sakata, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
Tel:    (703) 318-6800
Fax:    (703) 318-6808
E-mail:cbrown@cbcblaw.com

_____/s/_____
Michael E. Barnsback, Esquire
Virginia State Bar No. 33113
*Counsel for ECS Federal, Inc., S. Roy Kapani and George Wilson*

36

LeClairRyan
2318 Mill Road, Suite 1100
Alexandria, VA  22314
Phone: 703-647-5931
Fax: 703-647-5993
Email: michael.barnsback@leclairryan.com