IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JACQUELINE D. MARSTELLER,     )
                              )
     Plaintiff,               )
                              )
          v.                  )     1:13cv593 (JCC/JFA)
                              )
ECS FEDERAL, INC. f/k/a       )
ELECTRONIC CONSULTING         )
SERVICES, INC.,               )
                              )
     Defendant.               )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff
Jacqueline D. Marsteller's ("Plaintiff" or "Marsteller") Motion
to Dismiss Counterclaims ("Motion").  [Dkt. 13.]

For the following reasons, the Court will deny
Plaintiff's Motion as to Counts 1-5.  The Court will grant
Plaintiff's Motion as to Count 6.

**I.   Background**

This case arises out of an alleged instance of
misappropriation of confidential, proprietary and trade secret
information.

1

A.   <u>Factual Background</u>

ECS is a government contractor with its principle offices in Fairfax County, Virginia.  (Am. Compl. ¶ 5.) Marsteller began her employment with ECS on November 30, 2006. (Am. Compl. ¶ 33.)  On that date, she signed an "Employment Proprietary Information, Inventions and Non-Competition Agreement ("Proprietary Information Agreement").  (Countercl. ¶ 12.)  Paragraph 1.1 of the Proprietary Information Agreement states "at all times during my employment and thereafter, I will hold in the strictest confidence and will not disclose, use, lecture upon, or publish any of the Company's proprietary information . . . ."  (Countercl. ¶ 39.)  Under Paragraph 7 Marsteller allegedly agreed as follows:

> When I leave the employ of the Company, I will deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together [with] all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company.

(Countercl. ¶ 40.)

In the fall of 2011, Marsteller was employed by ECS as a Senior Vice President and Account Executive.  (Countercl. ¶ 1.)  On November 3, 2011 ECS informed Marsteller that her employment was terminated, effective at the end of the year. Marsteller continued to have access to ECS facilities and

2

resources during the interim period between November 3, 2011 and the effective termination date eventually agreed upon by ECS and Marsteller, December 15, 2011. (Countercl. ¶¶ 3, 18.) ECS had originally scheduled Marsteller's last day of employment to be December 31, 2011 in order to allow her to be eligible to receive a 2011 award incentive bonus in the amount of $94,986.00. (Countercl. ¶ 16, 18.)

ECS alleges that during this period, Marsteller misappropriated confidential, proprietary and trade secret information belonging to the company. (Countercl. ¶ 3.) ECS alleges that on November 16, 2011, Marsteller attached an external electronic storage device to her ECS desktop computer and accessed the computer's F: drive to transfer "highly sensitive and confidential information" to the external storage device. (Countercl. ¶ 4.) On November 30, 2011, Marsteller allegedly again transferred confidential information to an external storage device. ECS alleges that at the time these transfers were made, Marsteller was not engaged in work related activities on behalf of the company. (Countercl. ¶ 6.) Additionally, ECS alleges that Marsteller was not authorized to transfer this information to "any external storage devices." (*Id.*)

The "highly sensitive and confidential information" allegedly accessed and transferred by Marsteller included: (1)

ECS's list of wages for its contract with the United States
Postal Service National Customer Support Center ("USPS NCSC")
and corresponding hourly billing rates; (2) an invoice showing
"the actual hours worked by the staff and associated billing
rates per labor category" on the USPS NCSC contract; (3) ECS's
"USPS NCSC Quality Control Plan"; (4) USPS NCSC metrics (5)
"Pipeline Review documents" showing ECS's business development
pipeline; (6) a Waterfall Report containing a full list of all
of ECS's active contracts; (7) "Job Summary Reports" in the form
of an income statement; and (8) "Capture Plan and Capture
Templates" for an "FCC Infrastructure contract." (Countercl. ¶
7.)

        In addition to the above categories of information,
ECS alleges that Marsteller misappropriated the trade secret
management system documents that ECS used to obtain
International Organization for Standardization (ISO)
certification. (Countercl. ¶ 8.) ECS avers that ISO
certification increases an organization's value by "opening
contracting opportunities that require ISO certification, and by
elevating its perception in the contracting community."
(Countercl. ¶ 9.)

        ECS further alleges that between December 2, 2011 and
December 18, 2011 Marsteller e-mailed confidential and
proprietary information to her personal e-mail account.

4

(Countercl. ¶ 14.)  The documents allegedly misappropriated by Marsteller include: (1) a December 2, 2011 PowerPoint presentation showing the ECS business development pipeline; (2) an ECS Organizational Chart Template; and (3) internal e-mails from April 2011 concerning a GSA request for information. (Countercl. ¶ 15.)

On December 20, 2011, Marsteller contacted ECS requesting that her termination date be changed from December 31, as originally agreed, to December 15.  (Countercl. ¶ 17.) ECS agreed to the request and alleges that it advised Marsteller in writing that she would remain eligible for the award incentive bonus.  (Countercl. ¶ 18.)  ECS alleges that at this time it "further reminded Ms. Marsteller in writing of her obligations under the Information Agreement."  (Countercl. ¶ 20.)  Marsteller was paid the 2011 award incentive bonus on December 30, 2011 in an amount of $94,986.00.

ECS alleges that in December Marsteller began working for Ausley Associates, Inc. ("Ausley").  Ausley, like ECS, is a government contractor.  (Countercl. ¶ 22.)  Ausley obtained ISO certification after Marsteller joined the company.  ECS alleges that Marsteller used ECS's confidential, proprietary and trade secret documents for Ausley's benefit in this regard. (Countercl. ¶ 25.)

B.   Procedural Background

On May 13, 2013, Plaintiff filed her Complaint against ECS Federal, Inc. [Dkt. 1.]  On June 3, 2013, Plaintiff filed an Amended Complaint against Defendants ECS Federal, Inc. and S. Roy Kapani ("Kapani") and George Wilson ("Wilson"), named individually.[1] [Dkt 6.]  On July 26, 2013 Defendants filed an answer to the complaint.  In this answer, Defendant ECS asserted a counterclaim against Plaintiff containing six causes of action: (1) violation of the Virginia Uniform Trade Secrets Act ("VUTSA"); (2) violation of the Virginia Computer Crimes Act ("VCCA"); (3) breach of contract; (4) conversion; (5) breach of fiduciary duty; and (6) unjust enrichment.  [Dkt 10.]

On July 17, 2013, Plaintiff filed her Motion to Dismiss Counterclaims and accompanying memorandum of law. [Dkts. 13-14.]  Defendant ECS filed its opposition on July 30, 2013 [Dkt. 18] and Plaintiff filed her reply brief on August 5, 2013.  [Dkt. 20.]

Plaintiff's Motion to Dismiss Counterclaims is before the Court.

---

[1] Plaintiff's Amended Complaint contains eight causes of action: (1) gender discrimination in violation of Title VII against ECS; (2) breach of contract against ECS; (3) unjust enrichment against ECS; (4) wrongful termination in violation of Va. Code. § 40.1-29 against ECS, Kapani and Wilson; (5) actual fraud against ECS and Kapani; (6) constructive fraud against ECS and Kapani; (7) tortious interference with business expectancy against Kapani and Wilson; (8) civil conspiracy against ECS, Kapani and Wilson.  [Dkt. 6.]

6

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### III. Analysis

Plaintiff argues that the following counterclaims are subject to dismissal: (1) violation of the VUTSA; (2) violation of the VCCA; (3) breach of contract; (4) conversion; (5) breach of fiduciary duty and (6) unjust enrichment.  The Court will examine each claim in turn.

### A.   Violation of VUTSA

Count 1 of the Counterclaim alleges that Marsteller misappropriated trade secrets in violation of the VUTSA, Va. Code. Ann. § 59.1-336 *et seq.*  Specifically, ECS alleges that Marsteller "acquired ECS trade secrets by improper means in exceeding her authority in copying the trade secrets to external storage devices" and retaining such information.  (Countercl. ¶ 30.)  ECS avers that its ISO management system documents, the

8

ECS Capture Plan and Capture Plan Templates and the Pipeline review documents are entitled to trade secret status.  (Compl. ¶ 28.)  Marsteller argues that ECS fails to state a claim for two primary reasons: (1) ECS does not derive independent economic value from these documents and (2) ECS does not sufficiently allege that Marsteller used the trade secret information.  (Mem. at 12.)

To establish a claim under the VUTSA, a plaintiff must establish that (1) the information in question constitutes a trade secret and (2) the defendant misappropriated it. *Microstrategy v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004).

The first question, then, is whether the Counterclaim fairly pleads a trade secret.  The VUTSA defines a "trade secret" as

> information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that [d]erives independent economic value, actual or potential from not being generally known to and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code § 59.1-336.  "The case law is clear that just about anything can constitute a trade secret under the right set of facts." *MicroStrategy*, 331 F. Supp. 2d at 416.  Nevertheless,

an alleged trade secret must "meet all the criteria listed in the statute: (1) independent economic value; (2) not known or readily ascertainable by proper means; and (3) subject to reasonable efforts to maintain secrecy." *Trident Products and Services, LLC v. Canadian Soiless Wholesale LTD*, 859 F. Supp. 2d 771, 778 (E.D. Va. 2012).

The Court concludes that ECS validly pleads trade secret status as to the documents relating to ISO certification, the ECS Capture Plan and Capture Plan Templates and the Pipeline review documents. (Countercl. ¶ 28.) First, ECS provides sufficient factual support indicating that these documents provide ECS with independent economic value. (*See* Countercl. ¶ 7, 10.) ECS alleges that these documents would allow a competitor to "know ECS's business development and bidding plans" (Countercl. ¶ 7(f)), "target ECS's contracts upon re-competition" (Countercl. ¶ 7(g)) and access "ECS's unique format for summarizing a new contact opportunity." (Countercl. ¶ 7(f).)[2] Likewise, ECS sufficiently alleges that it derives independent economic value from the ISO management documents. ECS asserts that it "spent significant time, efforts and expense in developing its ISO management system documentation and implementing the system." (Countercl. ¶ 10.)

---

[2] ECS's pleading contains two paragraphs labeled 7(f). The Court refers to the second of the two.

Second, ECS's Counterclaim contains sufficient factual allegations stating that such information is not readily ascertainable by proper means. *Trident*, 859 F. Supp. 2d at 778. The documents relating to ISO certification, the ECS Capture Plan and Capture Plan Templates and the Pipeline review documents all reflect ECS's internal strategies or plans.  Such information is not publicly available and would not be readily ascertainable by those outside of ECS.  (Countercl. ¶ 7.) Third, ECS fairly alleges that it took reasonable steps to protect this information by storing it on an internal, password protected server.  (Countercl. ¶ 7, 11.)

The Court therefore moves to the question of whether the Counterclaim fairly pleads misappropriation.  The VUTSA recognizes misappropriation under two circumstances: (1) improper acquisition of a trade secret or (2) disclosure or use of a trade secret.  *See* Va. Code Ann. § 59.1-336. Misappropriation through acquisition of a trade secret is defined as: "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." *Id.* "Improper means" are defined under the VUSTA as including "theft, bribery, misrepresentation, use of a computer or computer network without authority, breach of a duty or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means." *Id.*

11

Misappropriation through disclosure or use occurs where a trade secret is "disclosed or used without consent by a person who, 'at the time of the disclosure or use knew or had reason to know that his knowledge of the trade secret was' derived via improper means, in violation of a duty of confidentiality or acquired by accident or mistake." *Softech Worldwide, LLC v. Internet Tech. Broadcasting Corp.*, No. 1:10cv651, 2010 WL 4645791, at *5 (E.D. Va. Nov. 8, 2010) (quoting Va. Code § 59.1-336).

The Court concludes that ECS validly pleads the element of misappropriation.  Marsteller argues that ECS's Counterclaim fails to adequately allege "disclosure or use" of a trade secret.  (Reply at 4.)  Marsteller ignores, however, the question of improper acquisition of a trade secret.  Under the VUTSA, improper acquisition of a trade secret, even in the absence of allegations of use or disclosure, is sufficient to state a claim.  *See* Va. Code Ann. § 59.1-336; *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655 (4th Cir. 1993) ("The essential element of a misappropriation claim is the 'abuse of confidence or impropriety in the means of procurement.'" (citation omitted)); *Systems 4, Inc. v. Landis & Gyr, Inc.*, 8 Fed. Appx. 196, 2000 (4th Cir. 2001) (unpublished) (noting that improper means alone can give rise to a claim for misappropriation of trade secrets).

12

Here, ECS's complaint is built upon the notion that Marsteller transferred and retained internal documents belonging to ECS outside the scope of the permitted use provided by her employment.  (Countercl. ¶ 4-6.)  ECS alleges that on two separate occasions Marsteller transferred proprietary documents belonging to ECS to an external storage device.  As this Court noted in *Microstrategy*, "there are a wide variety of methods used to acquire information that will be considered 'improper' under the VUTSA."  *Microstrategy*, 331 F. Supp. 2d at 417.  The Court finds that allegations of unauthorized transfer of trade secret documents to a storage device are sufficient to state a plausible claim that Marsteller acquired the information by "improper means."

Moreover, ECS's complaint contains plausible allegations that Marsteller used the ISO management system documents in her capacity at Ausley.  ECS alleges that these documents were developed by ECS in order to obtain ISO certification.  ISO certification requires the development and implementation of "the business processes established and required by ISO standards."  (Countercl. ¶ 9.)  Marsteller began working for Ausley in December 2011 as the Vice President of Business Process Engineering.  On July 31, 2012, Ausley received ISO certification.  (Countercl. ¶ 23.)  On the facts alleged it is plausible, not just possible, that Marsteller used or

13

disclosed misappropriated information for the benefit of Ausley in obtaining ISO certification.  (Countercl. ¶ 8.)  This is not an instance of mere use of business experience; the facts raise a "reasonable inference" that Marsteller used ECS's trade secret business processes for Ausley's benefit.  *Iqbal*, 556 U.S. at 663.  Indeed, such an unauthorized use of a competitor's trade secret documents is a well-established form of misappropriation. *See GTSI Corp v. Wildflower Int'l Inc.,* No. 1:09cv123, 2009 WL 1248144 at *6 (E.D. Va. 2009).  The Court therefore will deny dismissal of Count 1.

B. <u>Violation of the VCCA</u>

Count 2 of the Counterclaim alleges that Marsteller's misuse of the ECS computer system violated the VCCA.  (Va. Code Ann. § 18.2-152.4 as authorized by 18.2-152.12.)  Marsteller argues that ECS's claims under the VCCA are preempted by the VUTSA and should therefore be dismissed.

Under the VCCA, it is unlawful for "any person, with malicious intent to" engage in certain enumerated types of computer trespass.  Among those actions listed is:

> 6. Use a computer or computer network to make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs or computer software residing in, communicated by or, produced by a computer or computer network.

Va. Code Ann. § 18.2-152.4.[3]

Under the VUTSA, common law claims premised on the misappropriation of trade secrets, including those under the VCCA, are preempted.  The VUTSA provides that "except as provided in subsection B of this section, this chapter displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret."  Va. Code Ann. § 59.1-341.[4]  This provision has been interpreted by this Court to preclude "only those common law claims that are premised *entirely* on a claim for the misappropriation of a trade secret."  *Smithfield Ham and Product Co., Inc. v. Portion Pac, Inc.,* 905 F. Supp. 346, 348 (E.D. Va. 1995) (emphasis in original).  Therefore, the preemption question depends upon a threshold determination that the claim is based not just on misappropriation of confidential information, but that a trade secret is involved.

This Court has found that in the context of a motion to dismiss, such an inquiry is often premature.  "Unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative

---

[3] "'Computer data' means any representation of information, knowledge, facts, concepts, or instructions which is being prepared or has been prepared and is intended to be processed, is being processed, or has been processed in a computer or computer network."  Va. Code Ann. § 18.2-152.2.

[4] The VUTSA preempts "*all* claims for relief, including common law *and* statutory causes of action, if they provide a civil remedy for misappropriation of trade secrets *unless* they are contractual or criminal in nature."  *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1365 (Fed. Cir. 2005).

theories of relief as preempted by the VUTSA." *Stone Castle Financial Inc. v. Friedman, Billings, Ramsey & Co.,* 191 F. Supp. 2d 652, 658 (E.D. Va. 2002). *See also E.I. DuPont de Nemours,* 688 F. Supp. 2d at 451. In *Stone Castle,* the parties disputed whether the confidential information constituted trade secrets. *Stone Castle,* 191 F. Supp. 2d at 659. This Court found that such an issue was not appropriate for determination at the motion to dismiss stage, and therefore the VCCA claims were not preempted. Similarly, in *DuPont,* the court explained that "so long as [Defendant] contends that the information in question falls short of the statutory definition of 'trade secrets' the preemptive effort of the VUTSA cannot be determined on the pleadings alone." *E.I. DuPont de Nemours,* 688 F. Supp. 2d at 451.[5]

Here, Plaintiff likewise disputes whether the information allegedly misappropriated in fact constitutes trade secrets. (*See* Mem. at 11.) Plaintiff claims that "ECS cannot show that any of the alleged trade secrets are entitled to trade secret status . . ." (Mem. at 13.) Just as in *Stone Castle* and *DuPont,* because Plaintiff disputes the trade secret status of

---

[5] The Court's conclusion that ECS has validly plead trade secret status as to the ISO management system documents, the ECS Capture Plan and Capture Plan Templates and Pipeline review documents is not a resolution of the underlying factual issue. Whether these documents are entitled to trade secret status is a question of fact that cannot be determined based on the pleadings alone. *DuPont,* 688 F. Supp. 2d at 451.

16

the allegedly misappropriated information, a ruling on preemption cannot be made at this stage.[6]

Looking next to the substance of ECS's cause of action under the VCCA, the Court finds that the facts alleged are sufficient to state a claim.  ECS alleges that Marsteller intentionally transferred proprietary documents belonging to ECS from its internal computer system to personal electronic storage devices and a personal e-mail account.  (Countercl. ¶ 4, 5, 14.) These transfers were made, ECS alleges, without its authorization.  (Countercl. ¶ 6, 13.)  The Court finds that Marsteller's alleged acts of copying files in excess of her permitted computer network use authority are sufficient to state a claim under the VCCA.  Accordingly, Plaintiff's Motion to Dismiss Count 2 is denied.

C. <u>Breach of contract</u>

Count 3 of the Counterclaim alleges that Marsteller breached a contract with ECS by maintaining, failing to return, and using proprietary information in contravention of the Proprietary Information Agreement.  (Countercl. ¶ 41-43.)  In Virginia, the elements of a claim for breach of contract are (1) a legally enforceable obligation of a defendant to a plaintiff,

---

[6] Additionally, ECS alleges that Marsteller wrongfully took several other documents for which it does not claim trade secret status.  (Countercl. ¶ 7, 15.)  Therefore, ECS's claim as plead is not "premised *entirely* on a claim for misappropriation of a trade secret" as is required in order for the VUTSA's preemption provision to apply.  *Stone Castle*, 191 F. Supp. 2d at 659 (quoting *Smithfield Ham*, 905 F. Supp. at 350).

(2) the defendant's violation or breach of the obligation, and (3) an injury or harm to the plaintiff caused by the defendant's breach. *Ulloa v. QSP, Inc.,* 271 Va. 72, 79, 624 S.E.2d 43 (Va. 2006).

Plaintiff does not dispute that she and ECS had a contract. Rather, Plaintiff argues that any allegations that she "used or disclosed" proprietary information are purely speculative and that ECS failed to adequately plead damages. (Mem. at 16-17.) The terms of the Proprietary Information Agreement, however, also require that Plaintiff not maintain or fail to return ECS proprietary information. (Countercl. ¶ 41.)

The Court concludes that ECS validly pleads breach of the Proprietary Information Agreement based on Marsteller's continued possession and failure to return the proprietary information. Paragraph 7 of the Proprietary Information Agreement requires that Marsteller return to the Company "any and all drawings, notes, memoranda, specifications, devices, formulas and documents . . . and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company." (Countercl. ¶ 40.) ECS alleges that by transferring documents to an external storage device and by e-mailing documents to a personal e-mail account, Marsteller retained such information in breach of the Agreement. (Countercl. ¶ 4, 5, 14.) On the terms of the

18

contract, allegations of this unauthorized failure to return the information are sufficient to plead breach.

Additionally, the Court finds that on the question of use of ECS's proprietary or trade secret information, ECS has sufficiently alleged breach of contract. As discussed above (see *supra* A.) ECS makes allegations that rise beyond a purely speculative level as to Marsteller's use of the ISO management documents in her capacity at Ausley. Thus, ECS likewise states a plausible claim as to Marsteller's breach of the Proprietary Information Agreement in which she agreed not to "disclose, use, lecture upon or publish" such information. (Countercl. ¶ 39.)

Finally, the Court concludes that ECS has also fairly plead the element of damages. ECS alleges that under paragraph 8 of the Proprietary Information Agreement it is entitled to an injunction requiring Marsteller to return all materials. (Countercl. ¶ 43.) It also seeks damages in the form of royalty payments for the use of the Proprietary Information and the actual loss of the materials. (Countercl. ¶ 44.) Such allegations are sufficient to state a plausible claim for relief.

While Marsteller apparently argues that ECS's claims of damages are overly speculative because they lack specific monetary amounts, such allegations are not necessary to state a plausible claim to relief. Indeed, a "plaintiff's claim for

19

actual and compensatory damages is not necessarily invalid because it fails to specify a certain amount." *GTSI Corp v. Wildflower Int'l Inc.*, No. 1:09cv123, 2009 WL 1248114, at *8 (E.D. Va. 2009) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1259 (3d ed. 2004)). Therefore, the Court will deny dismissal of Count 3.

D. Conversion

Count 4 of the Counterclaim alleges that Marsteller is liable for conversion for copying and maintaining ECS's confidential and proprietary information. ECS avers that Marsteller "wrongfully exercised dominion and control over such property inconsistent with the rights of ECS." (Countercl. ¶ 46).

Under Virginia law, "[a] person is liable for conversion for the wrongful exercise or assumption of authority over another's goods, depriving the owner of their possession, or any act of dominion wrongfully exerted over property in denial of, or inconsistent with the owner's rights." *E.I. DuPont de Nemours & Co.* 688 F. Supp. 2d at 454 (quoting *Simmons v. Miller*, 261 Va. 561, 582, 544 S.E. 2d 666 (2001)). Virginia has endorsed an "expansive definition of conversion." *Id.* at 455. Therefore, this Court has noted, "it appears that the purloining of copies of documents would constitute conversion because such action is an act of 'dominion' inconsistent with

20

the true owner's property rights." *Id.* at 455.  Additionally,
in Virginia the measure of damages for conversion is the "value
of the property converted at the time and the place of
conversion." *Straley v. Fisher*, 176, Va. 163, 167 (1940).

Plaintiff claims that ECS cannot state a claim for
conversion because it "suffered no quantifiable loss." (Reply
at 4.)  The thrust of Plaintiff's argument is that in the
absence of a specific monetary figure, a claim of damages must
fail.  The Court rejects this argument and finds that ECS's
allegations are sufficient at this stage to state a claim for
conversion.

ECS alleges that Marsteller wrongfully exercised
authority over confidential information belonging to the company
by copying documents and maintaining such information after her
employment with the company had ended.  (Countercl. ¶ 46.)  ECS
avers that it suffered damages from this loss "including the
actual loss of the property" and is "entitled to royalty
payments" for the wrongful use of its property.  Under the
definition of conversion set forth in *DuPont*, such allegations
are sufficient to state a cause of action in conversion.[7]  In

---

[7] A recent case from the Western District of North Carolina may also be
instructive in this regard.  In *Springs v. Mayer Brown*, the court found that
for purposes of surviving a motion for summary judgment, defendants had
submitted sufficient evidence of conversion based on "evidence that plaintiff
made paper and electronic copies of digitally stored proprietary and
confidential documents by surreptitiously searching Mayer Brown's electronic

*DuPont,* the court explained that the plaintiff DuPont stated a claim for conversion based on the wrongful removal of confidential and trade secret information from Defendant's computer networks and offices.   *DuPont*, 688 F. Supp. 2d at 454. The court explained taking copies of documents nevertheless sounded in conversion because "use of a purloined copy by a commercial competitor to court the owner's customer actually deprives the owner of the ability to use the original with that customer."  *Id.*  Likewise, ECS alleges that Marsteller's unauthorized taking and retention of its proprietary documents impairs the value of such documents by eliminating ECS's "competitive advantage" in re-competition for ECS's contracts or "capturing" new contracts.  (Countercl. ¶ 7.)

Moreover, as noted above, allegations concerning specific amounts of monetary loss are not required for purposes of a motion to dismiss.  ECS has alleged that it suffered damages in the form of the loss of the property and is entitled to royalties; that is sufficient at this stage.  Accordingly, the Court will deny dismissal of Count 4.

E. <u>Breach of fiduciary duty</u>

Count 5 of the Counterclaim alleges that Marsteller breached her fiduciary duty of loyalty to ECS by copying and

---

files after being notified of her impending termination." *Springs v. Mayer Brown*, No. 3:09cv452, 2012 WL 366283, at *9 (W.D.N.C. 2012).

retaining the confidential and trade secret information. (Countercl. ¶ 50.)  In Virginia, a "common law duty must exist separate from a contractual duty in order to pursue both a claim for breach of contract and a claim for breach of fiduciary duty." *Stone Castle*, 191 F. Supp. 2d at 661.

Despite the general right of employees to prepare to compete with their employers, Virginia courts have found that "under certain circumstances, the exercise of the right may constitute a breach of fiduciary duty." *Feddeman & Co* v. *Langan Associates*, 260 Va. 35, 530 S.E.2d 668 (Va. 2000).  In *Feddeman*, the Supreme Court of Virginia noted, "liability for breach of fiduciary duty has been imposed when the employees or directors misappropriated trade secrets, misused confidential information and solicited an employer's clients or other employees prior to termination of employment." *Id* at 42.  *See also Combined Ins. Co. of America v. Wiest*, 578 F. Supp. 2d 822 (W.D. Va. 2008).[8]

The Court finds that ECS fairly pleads facts establishing a claim for breach of a common law fiduciary duty against Marsteller.  ECS alleges that as an executive of the company and a high level employee Marsteller owed a duty of

---

[8] Where a claim for breach of fiduciary duty is based solely on misappropriation of trade secrets, it is displaced under the VUTSA. *S & S Computers and Design Inc. v. Paycom Billing Services, Inc.*, No. CIV A. 500CV00058, 2001 WL 515260 (W.D. Va. 2001).  At this time, however, the Court declines to determine whether the allegedly misappropriated documents are entitled to trade secret status.  A ruling on preemption would be premature on a motion to dismiss where the parties dispute trade secret status.  *See Stone Castle*, 191 F. Supp. 2d at 559.

loyalty to the company.  (Countercl.  ¶ 50.)  Marsteller

allegedly breached this duty by wrongfully taking, retaining,

and in the case of the ISO system management documents, using

ECS's proprietary or trade secret information.  *See Alliance*

*Technology Group, LLC v. Achieve 1 LLC*, 3:12cv701 2013 WL 143500

(E.D. Va. 2013) (using "confidential information and trade

secrets" learned in prior employment may constitute breach of

fiduciary duty.)  Accordingly, the Court will deny dismissal of

Count 5.

F. Unjust enrichment

Count 6 of the Counterclaim alleges that Marsteller

was unjustly enriched by the salary and benefits paid to her

between November 3, 2011 and December 2011 the yearend bonus

paid to her in the amount of $94,986.00.  ECS alleges that had

it known of Marsteller's alleged copying of proprietary

information it would not have paid her the bonus or continued

her employment.  (Countercl. ¶ 58.)  Plaintiff argues that the

unjust enrichment claim must be dismissed because (1) ECS does

not allege that Marsteller did not perform "some commensurate

work" and (2) an express contract governs the subject matter.

(Mem. at 20.)

To state a claim of unjust enrichment in Virginia, a

plaintiff must show: "(1) a benefit conferred on the defendant

by the plaintiff; (2) knowledge on the part of the defendant of

24

the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 704 (E.D. Va. 2007) (quoting *Nossen v. Hoye*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990)).

The thrust of ECS's theory of unjust enrichment is that by breaching her obligations to the company under both contract – the Proprietary Information Agreement – and common law, Marsteller forfeited any entitlement to the award incentive bonus and continued employment with ECS.[9]  (Compl. ¶ 58-59.) ECS's claim is unusual in that it does not allege that Marsteller failed confer a benefit on the company; instead, ECS alleges that it would not have paid her the salary and bonus had it known of Marsteller's other alleged wrongdoing. Additionally, ECS does not allege that Marsteller's monetary gain was due to the alleged misappropriation of confidential or trade secret information.

Therefore, the Court finds that on the facts alleged ECS does not state a cognizable claim of unjust enrichment.  As ECS's counsel admitted in a hearing held before the Court on

---

[9] The Court finds that contrary to Marsteller's assertions, ECS's unjust enrichment claim is not barred by the existence of an express contract. (*See* Mem. at 20.)  While the Proprietary Information Agreement is an express contract, it governs ECS and Marsteller's relationship with regards to confidential and proprietary information, not Marsteller's compensation by ECS.

August 30, 2013, ECS cannot cite to any authority supporting the notion that an unjust enrichment claim may be maintained based on the payment of a salary or a bonus in these circumstances.

Indeed, several other courts have rejected employers' attempts to disgorge salaries and bonuses paid to officers and directors where the alleged wrongdoing is an unrelated breach of fiduciary duty. *See In re Capital One Derivative Shareholder Litigation*, No. 1:12cv1100, 2013 WL 3242685 at * 8 (E.D. Va. 2013); *In re Pfizer Inc. Shareholder Derivative Litigation*, 722 F. Supp. 2d 453, 465-66 (S.D.N.Y. 2010). The court in *Pfizer* rejected a claim of unjust enrichment based on defendant's retention of salaries, benefits and "unspecified bonuses." *Pfizer*, 722 F. Supp. 2d at 465. The court explained:

> Plaintiffs have not pleaded that defendants'
> compensation during this period was of
> extraordinary magnitude and have not cited any
> legal authority supporting the proposition that
> the mere retention of directors' and officers'
> ordinary compensation can sustain an unjust
> enrichment claim predicated on allegations that
> these defendants breached their fiduciary duties.

*Id.* at 465-66.

Likewise, ECS fails to allege any "causal relationship" between Marsteller's allegedly wrongful activities with regards to proprietary and confidential information and her "ordinary compensation." *Id.* While the Court acknowledges that gains derived from a breach of fiduciary duty or

26

misappropriation of trade secrets might give rise to an unjust enrichment claim in some circumstances, on these facts, Marsteller's allegedly wrongful actions did not lead to her compensation by ECS.[10]   Therefore, ECS fails to state a claim of unjust enrichment.   Accordingly, the Court will grant dismissal of Count 6.

### IV.   Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion to Dismiss Counterclaims as to Counts 1-5. The Court will grant Plaintiff's Motion to Dismiss Counterclaims as to Count 6.

An appropriate Order will issue.

|                        | /s/                              |
| ---------------------- | -------------------------------- |
| September 5, 2013      | James C. Cacheris                |
| Alexandria, Virginia   | UNITED STATES DISTRICT COURT JUDGE |

---

[10] In *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 829 (E.D. Va. 2011), for example, this Court allowed a plaintiff to proceed with an unjust enrichment claim based upon allegations that defendant "possessed [Defendant's] proprietary information in his capacity as a senior account executive, forwarded confidential information to his personal email account from his corporate email account at some point during his employment with [Defendant] and revealed this confidential information" to his new employer who then used the information in "a disparaging webinar." *Brainware,* 808 F. Supp. 2d at 829-830.   The unjust enrichment claim asserted in *Brainware*, is significantly distinguishable from that in the instant case.   The plaintiff in *Brainware* asserted that the unjust gains came from the exploitation of the wrongfully taken materials.   Here, the alleged unjust enrichment is unrelated to the use or exploitation of ECS's confidential or proprietary materials.