# ATTACHMENT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| JACQUELINE D. MARSTELLER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action: 1:13-cv-00593 JCC/JFA |
| | ) | |
| ECS FEDERAL, INC. | ) | |
| f/k/a ELECTRONIC CONSULTING | ) | |
| SERVICES, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' INITIAL RULE 26 DISCLOSURES

Pursuant to this Court's Rule 16(b) Scheduling Order, the Defendants ECS Federal, Inc. ("ECS") Roy Kapani ("Kapani") and George Wilson ("Wilson") and the Counterclaim Plaintiff ECS, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 26(a), respectfully submit their Rule 26 initial disclosures to Plaintiff as follows:

I.    **Witness Name and Address**

Pursuant to Rule 26(a)(1)(A)(i), Defendants identifies the following individuals who are likely to have discoverable information concerning the allegations in the Complaint and upon whom Defendant may rely in its defense of this action.

**Current ECS Employees (contact through counsel):**

Roy Kapani, CEO.   Overall knowledge of Defendants' Answer to the Amended Complaint, Defendants' affirmative defenses, ECS's counterclaim, Defendants' responses to Requests for Admissions, and responses to Interrogatories.   He also has knowledge of the

damages associated with confidential, proprietary and trade secret information misappropriated by Marsteller. For a more detailed description, see the responses to the interrogatories herein, and Mr. Kapani's responses to Ms. Marsteller's Interrogatories, and the documents produced.

George Wilson, President. Overall knowledge of Defendants' Answer to the Amended Complaint, Defendants' affirmative defenses, ECS's counterclaim, Defendants' responses to Requests for Admissions, and responses to Interrogatories. He also has knowledge of the damages associated with confidential, proprietary and trade secret information misappropriated by Marsteller. For a more detailed description, see the responses to the interrogatories herein, and Mr. Wilson's responses to Ms. Marsteller's Interrogatories, and the documents produced.

Anthony Schulien, Senior Vice President and Chief Financial Officer. Overall knowledge of Defendants' Answer to the Amended Complaint, Defendants' affirmative defenses, ECS's counterclaim, Defendants' responses to Requests for Admissions, and responses to Interrogatories. He also has knowledge of the damages associated with confidential, proprietary and trade secret information misappropriated by Marsteller. He also has knowledge of his role in the capture of the USPS NCSC contract and the significant role that Tess Swatt had in the capture, including the significance of the oral presentation, and the lesser contributions of Ms. Marsteller. For a more detailed description, see the responses to the interrogatories herein and the documents produced.

Dr. Rich August, Vice President and Account Executive. Knowledge of the following: general knowledge of Marsteller's performance including her lack of new business in 2009 and 2010 compared to August's conversion of contract opportunities those years; Marsteller's removal from the DOL contract at the request of the customer; Marsteller complaining about not receiving continued credit for contract revenues that had been moved to Ms. Dennis' division,

Dr. August also had contract revenues moved to Ms. Dennis' division; the removal of Ms. Dennis from reporting to Ms. Marsteller and placing her in charge of her own division; Ms. Marsteller's general performance and her perception by other employees including that she was a micro-manager, did not provide employees with much direction and was scattered, complaints by people in the proposal shop about her miscommunications or messy mark-ups, that she did not provide good feedback to others and was focused on self-references and her own personal superlatives, that she would cut people off in discussions and did not listen to others, and that she could become very emotional; conversations with Marsteller about the Change in Control Agreement and her lack of understanding of the agreement and her concern over her financial condition because she had numerous houses and was the primary income earner for her family and her dependency on the eventual payout if the company were sold; the February 2010 lunch meeting where Marsteller indicated that she wanted to be involved in capture activities and Mr. Powell's response that business development was responsible for capture and that she was responsible for operations; the reorganization in the summer of 2011 and his and Ms. Marsteller's assignment to Account Executive positions which changed the focus of their positions from operations to capture.

Tess Swatt, Vice President IT Services Division. Knowledge of the following: had a prior relationship with Marsteller during the time both were employed at Orkand; had previously worked with DOL and was contacted by Marsteller in December 2008 to work for ECS managing its contract with the DOL; when she worked under Marsteller at ECS, she handled all of the operations issues and Marsteller was responsible for developing new business; Marsteller's interactions with others, including that she could "rub people the wrong way;" conversation with Marsteller after she learned of termination.

3

June Marion, Director of Proposal Development.  Knowledge of the following:  Ms. Marsteller's performance managing her division and several contracts; Marsteller's sales efforts and lack of success compared to Rich August; Marsteller's generation of many proposals resulting in few wins; loss of business under Marsteller's management including the FAA and DOL bids; Marsteller's report of the problem with Harris after the USPS contract was awarded; the January 2011 meeting where Marsteller "exploded" at Mr. Powell and became very emotion because of her inability to understand what was being explained to her about the difference between the role of business development employees at ECS and her role, and inability to understand how the business development employees were going to help her achieve her division goals; information about Marsteller's termination as reported by Marsteller.

Scott Weaver, Senior Vice President of Corporate Development.  Knowledge of the following: providing business development support to Marsteller and August; the comparison of the performance of Marsteller and August in that Marsteller struggled and did not feel comfortable requiring more support from business development than August because he was more independent and self-sufficient in responding to RFP's; Marsteller's performance issues including difficulty clearly articulating and organizing her thoughts, his concern over Marsteller going along to important meetings because of how ECS would be perceived; the February 2010 lunch meeting referenced in the Amended Complaint and the discussion that Mr. Powell preferred that Mr. Weaver's team be involved in capture efforts and that Mr. Powell did not become angry or raise his voice at Marsteller; and a conversation with Marsteller after she learned of her termination where she talked about how much money she brought into ECS.

Darian Dennis, Director of Information Assurance Division.  Knowledge of the following:  began working with ECS in 2004 writing quality assurance documentation (ISO

4

system materials) and later hired as the Director of IT Services reporting to Mr. Powell; was aware of Marsteller's consulting arrangement with ECS and was surprised by her hiring because she felt Marsteller was a very high maintenance person with a difficult personality, who would get upset and cry; in her position as Director of IT Services she reported to Marsteller; as Ms. Dennis' manager she observed that Ms. Marsteller had no people skills and would say things to employees that was not appropriate, she was very self-absorbed and conversations would be always be about Marsteller, she would often cry and become emotional, and would feel that her contributions were more significant than others; her removal of reporting responsibility to Marsteller based on her relationship with Marsteller and her management Ms. Dennis' management of the USDA FSA work in Kansas City; Marsteller's complaints to her that she should still be credited for revenues under the USDA FSA and GNMA contracts after they were moved to Dennis, despite the fact that Marsteller had no contact with the customers and not involvement in the contacts after they were moved; Marsteller's performance in her Account Executive Role; and the January 2011 meeting where Marsteller had a "meltdown."

Jo Vaikasas, Project Manager.  Knowledge of the following:  Ms. Marsteller's poor management skills and inappropriate conduct during staff meetings; his conversation with Jeff Powell where he indicated his intention to resign if he had to continue to work with Ms. Marsteller, and his decision to remain employed with ECS when he was advised of the upcoming reorganization that would remove him from reporting to Ms. Marsteller; complaints from co-workers including Fred Specht and George Lara-Lopez, and subcontractors Vijay Peck (with ATS) about Ms. Marsteller.

Sandra Dickinson, Director of Customer Support Division.  Knowledge of the following: Marsteller's general conduct in the office and during the weekly Friday staff meetings;

Marsteller was generally disrespectful to Ms. Powell during the staff meeting often snapping at him when she didn't get her way or when Mr. Powell said something she didn't like; Marsteller's staff meeting reports on what she was doing had no substance and showed a lack of progress in obtaining new business; during the last 18months of her employment she did not come to the office very often; Dickinson's and Marsteller's offices were next to each other and Marsteller would often pop in to talk about her family; Dickinson had the feeling that Marsteller was not a team player and that her priority was what she could do to make more money; although Dickinson technically reported to Marsteller, she advised Mr. Powell that there was "no way" she was going to report to Marsteller.

Leslie Baldwin, IT Manager:   Knowledge of the following:   the contents of Ms. Marsteller's ECS issued computer at the time of her termination; the documents misappropriated by Marsteller identified in the Counterclaim; ECS's computer servers, email system and security measures associated with the computer systems.

Angie Bangit, Quality Assurance Manager.  Knowledge of the following:  developing, amending, training, and auditing ECS's ISO system, which is comprised in part of ECS's Quality Management System Manual (QMSM) and Quality System Procedures (QSP) documents; communications with ECS managers and executives to understand the business processes and to adjust the ISO documents when necessary; conduct of internal audits of the system to ensure ECS follow the written procedures; communications with the external auditors during annual audits to maintain official registration; and the calculation of damages associated with Marsteller's theft of ECS documents and information.

Rhonda Lin, Controller.  Knowledge of the following:  the calculation of damages associated with Marsteller's theft of ECS documents and information.

**Former ECS Employees:**

Jeffrey Powell, 21497 Hearthstone Court, Ashburn, VA 20148. Knowledge of the following: Overall knowledge of the facts supporting Defendants' Answer to the Amended Complaint. Specific knowledge of Marsteller's hiring, performance and termination. Specific knowledge of Marsteller bonus compensation, including the fact that he never discussed or offered Marsteller the bonus she claims with regard to the USPS NCSC contract award. For a more detailed description, see the responses to the interrogatories herein, and the documents produced.

Al Goldstayn, 336 Ravine Drive, Winchester, TN 37398. Knowledge of the following: his responsibilities and performance as an Account Executive; his termination from ECS.

Mike Sinisi, 7086 Solomon Seal Court, Springfield, VA 22152. Knowledge of the following: his responsibilities and performance as an Account Executive; his termination from ECS.

**Department of Labor:**

Kebo Mendley. Knowledge of the following: Her observations and complaints about Marsteller's management of the contract; and her communications with ECS and her reasons for directing ECS that she be removed from any involvement with the contract.

**Harris:**

David Trask, Enterprise Program Manager, Harris IT Services

"Monty" Montgomery, Director, Harris IT Services.

Wayne Luceroni, President, Harris IT Services

All three have knowledge of their negotiations with Marsteller and her representations regarding the teaming agreement for the USPS NCSC contract; Ms. Marsteller's unilateral change to the agreement removing Harris' positions under the contract; and, Harris' position that Marsteller's actions resulted in a breach of its contract with ECS.

## Sensei Enterprises, Inc.

Michael Mashke and John Simek, Sensei Enterprises, Inc., 3975 University Drive, Suite 225, Fairfax, Virginia  22030.  An expert report will be provided as required by the terms of the discovery plan for the identification of expert witnesses.


II.     **Document Disclosure**

Pursuant to Rule 26(a)(1)(A)(ii), a copy or description of documents document:  See ECS000001-607 produced in response to Plaintiff's First Request for Production of Documents to ECS Federal, Inc.  Defendants will seasonably supplement this response as more documents are identified and produced.


III.    **Computation of Damages**

Pursuant to Rule 26(a)(1)(A)(iii), Counterclaim Plaintiff ECS provides its computation of damages as follows:

The value and/or cost associated with the document misappropriated by Marsteller is as follows:

**ISO documents**:  The total estimated cost to develop and maintain the ISO documents stolen by Ms. Marsteller is $606,981.00.  The cost includes the labor involved plus Loads defined below plus the actual fees paid to the ISO registration auditors.  For this item and the items below, the term "Loads" includes fringe benefits costs plus a portion of the corporate G&A to collect non-labor indirect expenses such as rent, utilities, computers, supplies, etc.

8

**Pipeline and Capture Plans**:  The total estimated cost to develop and maintain the information contained in the pipeline documents and capture plans stolen by Ms. Marsteller is $2,813,480.00. The Pipeline report taken was a spreadsheet containing 172 rows for each of the 172 new business opportunities with a total expected revenue value of over $73 million (calculated as the estimated calendar year 2012 revenue for each opportunity multiplied by the estimated probability of win).  Considerable time and effort was spent by ECS staff to generate such a robust pipeline.  The pipeline report is produced weekly and is the culmination of the entire on-going efforts of the Corporate Development, Account Executive, and Proposal departments, as well as partial time spent by Operations Managers and the Director of Contracts.  ECS pays salaries to the individuals who produce the pipeline and prepare the corresponding proposals with the expectation that it will yield profitable revenue growth for the company.  ECS can either buy the revenue by acquiring companies, or as it does, can invest in its internal Business Development process to gain new revenue.  It takes the average business development professional at least one full year to develop a robust pipeline and to begin to win actual contracts.  Therefore, a reasonable value for the pipeline report stolen is one full year of ECS business development and proposal labor costs. Accordingly, the value of the Pipeline report is the <u>annual</u> <u>labor</u> costs plus Loads defined above for the following staff who contributed to the Pipeline Report and Capture Plans that Ms. Marsteller stole:

- Corporate Development: 100% of the loaded annual labor cost for Scott Weaver, Elizabeth Singletary, and Jackie Fendrock
- Account Execs:  100% of the loaded annual labor cost for Rich August, Randy Ball, Jackie Marsteller, Mike Sinsi, and Al Goldstayn
- Proposals: 100% of the loaded annual labor cost for June Marion, Shaanon Lindauer, Geeta Anand, Monica Teran, and Amanda Jose

- Operations Managers: 20% of the loaded annual labor cost for Jeff Powell, Darian Dennis, Beverly Drees, Greg Garno, Neil Gopalani, and Sandra Dickinson
- Others: 10% of the loaded annual labor cost for Stan Goodman and Jim Sherwood plus 100% for Stu Williams for half the year

## Job Summary Reports ("JSRs") & USPS NCSC Rates/Invoice:

The total estimated cost to develop and maintain the information contained in the JSRs and USPS NCSC Rates/Invoice stolen by Ms. Marsteller is $127,449.00. The JSRs are the culmination of all the work the entire ECS Accounting staff performs each month to collect, record and report ECS's expenses and revenues. Since the revenue for the contracts related to Ms. Marsteller's accounts were approximately 17% of the total company revenues at the time, then the value of the accounting reports that Ms. Marsteller took is approximately 17% of the annual labor costs for the total Accounting Department staff (Ronda Lin, Stephanie Grant, Helen Tran, Claudia Malavazi, and Maria Canales plus half the year for Belinda Salce) plus Loads defined above plus the license fees for the Deltek accounting system software.

## Waterfall:

The total estimated cost to develop and maintain the Waterfall reports stolen by Ms. Marsteller is $120,286.00, which is labor costs for hours estimated to be associated with the following Contracts Department staff (Jim Sherwood, Wes Day, and Neel Deshmukh) who maintained the contract database since 2007 plus Loads defined above.

The total estimated loss known to date is $3,668,196.00. This disclosure will be supplemented as the complete extent of Ms. Marsteller's theft is disclosed.

See ECS 000608 – ECS 000614.

IV.   **Insurance Agreements**

Pursuant to Rule 26(a)(1)(A)(iv), there is an insurance agreement under which may provide coverage to satisfy part or all of any judgment that may be entered in this matter or to indemnify or reimburse Defendants for payments made to satisfy any such judgment. A copy will be made available for review and/ or copying.

Respectfully submitted,

ECS Federal, Inc., Roy Kapani
George Wilson

*By Counsel*

_____ with permission: NM H Merchant

Michael E. Barnsback, Esquire
Virginia State Bar No. 33113
Noor H. Merchant, Esquire
Virginia State Bar No. 84209
LeClairRyan
2318 Mill Road, Suite 1100
Alexandria, VA 22314
Phone: 703-684-8007
Fax: 703-684-8075
Email: michael.barnsback@leclairryan.com
Email: noor.merchant@leclairryan.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August 2013, the foregoing was served via electronic mail and first class mail to counsel for Plaintiff at the address below:

Carla D. Brown (VSB No. 44803)
Charlson Bredehoft Cohen Brown & Sakata, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
cbrown@cbcblaw.com

Noor H. Merchant